Judgment affirmed in part, reversed in part, and appeal dismissed in part and Opinion filed May 2, 1996



In The

# Court of Appeals

For The

## First District of Texas

---

### NO. 01-94-00273-CV

---

### EDWARD MEYERS CALDWELL, Appellant

### V.

### RIVER OAKS TRUST COMPANY, JOHN NIHISER, JOHN FOX, MARIETTA SCHUMACHER, DAVID SCHUMACHER, AND MERRILL SHIELDS, Appellees

---

On Appeal from Probate Court No. 1
Harris County, Texas
Trial Court Cause Nos. 248,018 & 248,018-401

---

## OPINION

Appellant, Edward Meyers Caldwell, was the plaintiff in the consolidated lawsuits that are the subject of this appeal. The trial court granted summary judgments in favor of defendants River Oaks Trust Company (ROTC), John Nihiser, John Fox, David Schumacher, and Marietta Schumacher. The trial court also granted the motion for special appearance filed by defendant Merrill Shields. We dismiss in part, affirm in part, and reverse in part.

## The Plaintiff's Brief

Before we address the merits of this case, we address the appropriateness of the plaintiff's brief. The plaintiff filed a motion for leave to file a brief in excess of 50 pages in which he stated that this appeal was "difficult if not impossible to present with clarity in fewer pages." We granted the motion. The plaintiff has burdened this Court and the appellees with an unwieldy 70-page diatribe disguised as an appellate brief. It is filled with invective--such as referring to ROTC as the "trustee from hell" and describing Marietta Schumacher as a cat torturing a mouse--that has absolutely no place in an appellate brief.[1] It contains numerous confusing references to unidentified persons, entities, and events. It contains a tremendous amount of unnecessary information. What the brief does not contain is cogent legal argument. The rules of appellate procedure provide that the argument in a brief shall include "a *fair, condensed* statement of the facts pertinent to" the points of error. TEX. R. APP. P. 74(f)(1) (emphasis added). We have no doubt the plaintiff could have briefed his points of error "with clarity" in 50 pages or less if he had not sacrificed legal analysis in favor of hyperbole.

## Uncontroverted Facts and Procedural Background

The plaintiff's suit against ROTC, Nihiser and Fox began as a suit to modify a trust and to have ROTC removed as trustee; the plaintiff later added Nihiser and Fox as defendants and alleged various tort causes of action against all three defendants. The plaintiff's suit against his sister Marietta, his nephew David (Marietta's son), and attorney Shields arose from a family dispute.

The story begins in 1938, with the death of wealthy Nebraska rancher E. P.

---

[1]  We note that the Texas Lawyer's Creed, adopted by the Texas Supreme Court, urges lawyers to "avoid disparaging personal remarks or acrimony toward opposing counsel, parties, and witnesses." TEXAS LAWYER'S CREED, WEST'S TEXAS RULES OF COURT (1996).

Meyers. Meyers's will left one-third of his estate to his daughter Esther Caldwell in the form of a life estate; any part remaining at her death would go "to the children of the said Esther Edna Caldwell then living, in equal shares." Esther had two children--the plaintiff and Marietta.

For most of his adult life, the plaintiff depended on his mother Esther for financial support. In 1980, when the plaintiff was in his 50s, Esther created a spendthrift trust for him. ROTC was the trustee of the trust. The trust agreement provided that ROTC was to pay the net income of the trust to the plaintiff and

> if and to the extent such income is insufficient, such amounts out of the principal of such Trust as, in the sole, reasonable discretion of such Trustee, are necessary or advisable for the health, support, maintenance, comfort and welfare of the Beneficiary.

The trust agreement also provided:

> In making any discretionary payments to a beneficiary hereunder the Trustee shall consider the standard of living to which such beneficiary shall have become accustomed during Trustor's lifetime.

The trust agreement contained provisions covering the resignation of a corporate trustee. It also designated Marietta as an advisor to the trustee, and gave her absolute veto power over certain transactions.

Trust officer John Nihiser administered the plaintiff's trust until April 1988, when Nihiser was promoted. After Nihiser's promotion, trust officer Virginia Simons was assigned to the appellant's trust. Nihiser was Simons's supervisor until he left ROTC in November 1991.

In 1985, the plaintiff and his mother purchased a mica mine. Esther provided the purchase price of $255,000, and made monthly payments of $8500 to keep the project going.

-3-

On June 29, 1989, Esther had a stroke. On July 20, 1989, Esther executed a power of attorney naming Marietta as her attorney-in-fact. The power of attorney was drafted by Thomas Houghton, who had been Esther's attorney since 1980. Shortly after Esther's stroke, the plaintiff asked Marietta to advance him $8,500 from Esther's funds to make the monthly payment for the mica venture. When Marietta refused, the plaintiff threatened to sue her.

In September 1989, Esther moved from Houston to California. In October 1989, a California court signed an order declaring Esther incompetent and appointing Marietta as her conservator. On February 9, 1990, in a suit captioned *Guardianship of Esther Meyers Caldwell, N.C.M.*, (the "guardianship proceeding"), Harris County Probate Judge Pat Gregory signed an order establishing a permanent guardianship of Esther's estate. Judge Gregory appointed attorney Robert MacIntyre as guardian of the estate.

The plaintiff, a resident of Wyoming, also maintained an apartment in Denver. In the fall of 1990, in a Denver hospital, he had surgery on an infected leg. When he was released from the hospital, he moved into a room at the Residence Inn hotel in Denver. ROTC had paid in advance for a two-week stay. The plaintiff did not want to leave the Residence Inn at the end of the two-week stay because his own apartment was dirty. Virginia Simons, the trust officer assigned to his account, contacted a cleaning service and got an estimate to clean the apartment, but the plaintiff refused to allow the service to clean the apartment. As a result, ROTC refused to pay for the plaintiff's continued stay at the Residence Inn. On December 27, the plaintiff returned to the Residence Inn to discover he had been locked out of his room.

In June 1991, the plaintiff's attorney wrote to ROTC, asserted the 1980 trust had become uneconomical, and asked ROTC to resign as trustee in favor of the plaintiff's cousin, Mercedes Loring. According to an ROTC statement of account for the

-4-

quarter ending June 31, 1991, the 1980 trust's assets totaled $275,413.81. Simons responded that, under section seven of the trust agreement, ROTC could only resign and appoint an individual successor trustee if the trust had become uneconomical.[2] Simons went on to state:

> The trust is currently not of an uneconomical size; therefore, River Oaks Trust Company will not be able to accommodate Mr. Caldwell's request. We will, however, be happy to resign in favor of a court appointed successor trustee as provided under Section 7(c) of the trust agreement.

---

[2] Section seven of the trust agreement provides:

> 7. The designation and appointment of any substitute or successor Trustee of a Trust hereunder shall be made as follows:
>
> (A) Any Trustee may resign or refuse to act hereunder without court action by giving at least thirty (30) days written notice to each income beneficiary . . . .
>
> (B) If it should become uneconomical for the corporate fiduciary acting as Trustee hereunder to continue so to act because of the value of the Trust Estate of such Trust, such Trustee may, after giving the notice provided for in Paragraph 7(A) hereof, (i) resign as Trustee and appoint an individual (other than Trustor) as successor Trustee, or (ii) terminate such Trust by complete distribution to the income beneficiary of such Trust, if such income beneficiary is not under a legal disability.
>
> (C) Except as otherwise provided in Paragraph 7(B) hereof, if at any time any corporate fiduciary named or acting hereunder is unable or unwilling to continue to act as Trustee hereunder, Trustor may appoint within thirty (30) days of the receipt of written notice of such refusal or resignation, a successor or substitute Trustee hereunder (other than Trustor), or if such Trustor fails to so appoint a successor or substitute Trustee, such corporate fiduciary or any beneficiary of a trust created hereunder may apply to a court of competent jurisdiction for the appointment of a Trustee of such Trust.

On November 20, 1991, the plaintiff filed suit against ROTC (the "trust lawsuit"), seeking to have ROTC replaced as trustee. ROTC hired attorney John Fox to represent it in this lawsuit. At some point (probably in 1992),[3] the plaintiff amended his petition to include Nihiser and Fox as defendants and to allege various tort causes of action against all three defendants.

In October 1991, the plaintiff had a stroke and was hospitalized. He was released on November 22, and moved to a two-bedroom apartment in the Brooks Towers, the apartment building in which he already maintained a one-bedroom apartment. In January 1992, Simons wrote to the plaintiff and told him that although ROTC had paid two-months rent on the apartment, it had not approved further payments:

> In order to consider future disbursements of this nature, we will require a complete evaluation of your current situation. Furthermore, we will require written authorization from your sister, Marietta Schumacher.[4] The suite, combined with your regular monthly rent, in addition to sitter, physical therapists, utility bills on both apartments, and other various expenses[5] are adding up to a large enough amount that it may be more economical for you to consider moving into a retirement center or other similar facility.
>
> Until such time as we have evaluated the situation and obtained your sister's approval of any action taken, we will not distribute funds to cover rental on the suite.

Despite this letter, ROTC paid for two additional months rent on the two-bedroom

---

3      The record contains only the plaintiff's original petition and sixth amended petition in the trust lawsuit.

4      It is not clear from the record whether ROTC actually sought the written authorization from Marietta.

5      All of these expenses were paid by ROTC from the trust directly to the party to whom the expense was owed.

-6-

apartment, and was able to arrange for the plaintiff to move into another, less expensive two-bedroom apartment in Brooks Towers (on the same floor as his one-bedroom apartment). ROTC paid the rent on both apartments from the trust.

In March 3, 1992, ROTC notified the plaintiff of its intention to resign as trustee as soon as a successor trustee could be appointed by Esther, her guardian, or the court. ROTC sent copies of this letter to the plaintiff, Marietta, Esther, and Esther's guardian. ROTC also later notified the plaintiff's daughters, the contingent remaindermen of the trust, of its intent to resign.

On April 2, 1992, ROTC notified Marietta and the plaintiff's daughters that, unless they objected, it would appoint the plaintiff's cousin, Mercedes Loring, as successor trustee. In a letter written on behalf of herself and her nieces, Marietta asked ROTC not to appoint Loring, but to petition the court to appoint a successor trustee. In May, ROTC filed its "Resignation of Trustee, Application for Successor Trustee and Application for Approval of Final Account."

On August 25, 1992, plaintiff filed a lawsuit in Brazoria County (the "family lawsuit"). The appellate record does not contain a copy of his original petition in the family lawsuit, but according to the plaintiff's brief, the original defendants in the family lawsuit were Marietta, David, Thomas Houghton, Merrill Shields, Compass Bancshares, Inc.,[6] Charles McMahen,[7] and "others." The trial court granted Shields' special appearance. The plaintiff nonsuited Houghton and Compass Bancshares, and apparently

---

[6]     Although it is not entirely clear from the record or plaintiff's brief, it appears that ROTC and Compass Bank are subsidiaries of Compass Bancshares, which is, itself, a subsidiary of Central Bancshares of the South, Inc. The plaintiff asserts in his brief that he filed suit against these entities because Compass Bancshares and Central Bancshares "refused to stop R.O.T.C.'s activities."

[7]     McMahen was chairman of the board of Compass Bancshares, Inc.

-7-

omitted McMahen and the "others" from later amended petitions. In his third amended petition in the family lawsuit, only Marietta and David are named as defendants.

On September 4, 1992, ROTC filed an original third-party petition in the trust lawsuit naming Marietta and David as third-party defendants. ROTC asserted that in the family lawsuit, the plaintiff alleged "that the Third Party Defendants and others are liable to him for, *inter alia*, the exact same damages which he claims against [ROTC] in this cause."

The trust lawsuit was pending in Judge Gregory's court, Harris County Probate Court Number Two. On September 8, 1992, both ROTC and Marietta and David filed motions in that court to transfer the family lawsuit pending in Brazoria County to Harris County. On September 25, Judge Gregory granted the motions and transferred the family lawsuit to his court. On December 18, Judge Gregory granted Marietta's motion to consolidate the trust and family lawsuits.

As of December 18, 1992, Compass Bancshares was still a defendant in the family lawsuit. At a hearing on December 18, Judge Gregory said to the plaintiff's lawyer:

> In all fairness, Mr. Moore, I think it's incumbent upon me as a trial judge to disclose to you I have a banking relationship with Compass Bank. It would not affect my judgment in any manner, but I believe it is incumbent by the Canons of Ethics that I disclose that to you.

Moore replied, "Well, with the representation that it's not going to affect your judgment in this case [sic]."

On January 29, 1993, Judge Gregory sustained Merrill Shields' special appearance, and granted Fox's motion for summary judgment. On February 5, the plaintiff nonsuited Houghton and Compass Bancshares, Inc.

At this time, the guardianship proceeding was also pending in Judge Gregory's court. On February 5, 1993, Judge Gregory recused himself from the

consolidated trust-family lawsuits. The record does not reflect why Judge Gregory recused himself, but in his brief, the plaintiff asserts that the judge recused himself "after it was pointed out to him that his ex parte meetings with the guardian of Esther's estate and representatives of David and Marietta Schumacher meant that he would be a witness [in the trust-family lawsuits]." Judge Gregory transferred the consolidated cases to Harris County Probate Court Number One, over which Judge John Hutchison presided. The alleged *ex parte* meetings took place in the guardianship proceeding, not in the consolidated trust-family lawsuits.

In June 1993, the plaintiff sought to depose Judge Gregory and served him with a subpoena duces tecum. He wanted to depose Judge Gregory to investigate the judge's banking relationship with Compass Bank. The plaintiff also noticed the deposition of Charles McMahen, chairman of the board of Compass Bancshares, Inc., in his individual capacity and as custodian of Compass Bank records. On June 25, 1993, Judge Hutchison granted the motions to quash and motions for protective orders filed by Judge Gregory and McMahen.

In August 1993, the plaintiff filed motions for reconsideration of the following rulings: granting of Fox's motion for summary judgment; the granting of Shields's special appearance; and the protective orders granted in favor of Judge Gregory, McMahen, and Compass Bancshares. Judge Hutchison denied these motions.

The motions for summary judgment of Marietta, David, and ROTC and Nihiser were set for a hearing on August 16, 1993. On August 12, the plaintiff filed summary judgment evidence he called the "1993 Appendix," which contained a "Sequence of Events" (apparently drafted by one of the plaintiff's attorneys) and 124 exhibits. The 1993 Appendix totalled 384 pages. At the summary judgment hearing, Judge Hutchison denied the plaintiff's motion for consideration of that evidence and denied his request for

a continuance. At the hearing, the plaintiff also presented a seventh amended petition.[8] Judge Hutchison refused to consider it for purposes of the summary judgment hearing. Judge Hutchison denied all of the plaintiff's objections to the evidence submitted in support of the defendants' motions for summary judgment and granted the motions for summary judgment filed by Marietta, David, and ROTC and Nihiser.

On October 21, 1993, Judge Hutchison conducted a hearing on ROTC's "Resignation of Trustee, Application for Successor Trustee and Application for Approval of Final Account" and all supplemental accountings filed. Judge Hutchison overruled the plaintiff's objections to the final accounting and supplemental accountings, held that the 1980 trust was uneconomical, and ordered the trust dissolved and the remaining corpus distributed to the plaintiff.

### The Plaintiff's Claims in the Trust Lawsuit

The plaintiff's first cause of action in the trust lawsuit was a request that the court appoint Mercedes Loring to replace ROTC as trustee. Additionally, the plaintiff alleged causes of action against ROTC, Nihiser, and Fox for negligence, breach of fiduciary duty, conversion, duress and extortion, and violation of the DTPA.[9]

### The Plaintiff's Claims in the Family Lawsuit

In his third amended petition in the family lawsuit, the plaintiff asserted that

---

[8] At the time of the hearing, the live pleadings consisted of a sixth amended petition in the trust lawsuit and a third amended petition in the family lawsuit. The seventh amended petition incorporated the parties and causes of action (except intentional infliction of emotional distress) from both lawsuits into one pleading, and added a cause of action for conspiracy against ROTC and Nihiser and a cause of action for fraud against David and Marietta.

[9] The plaintiff's brief contains no argument concerning the summary judgment in favor of ROTC, Nihiser, and Fox on his DTPA cause of action. The plaintiff has therefore waived any appellate complaint regarding his DTPA cause of action. TEX. R. APP. P. 74(f).

Marietta and David, aided by Houghton and Shields,

> entered into a conspiracy to harm [the plaintiff] and to defraud him of his potential inheritance. David acted as Marietta's confidant, advisor and sub-agent. He directed most of the activities of Houghton and Shields. They began a course of conduct in which they sought every opportunity to create mental anguish for [the plaintiff] and place unnecessary pressure and stress upon him.

Although ROTC was not named as a defendant in this petition, the plaintiff asserted that in 1990, ROTC became "an active participant in the scheme to place undue pressure on [the plaintiff]." The petition alleged causes of action for negligence, intentional infliction of emotional distress, civil conspiracy, duress and coercion, and breach of fiduciary duty.

## Points of Error Relating to Judge Gregory

Several of the plaintiff's points of error relate to Judge Gregory's involvement in the case. In point of error five, he asserts Judge Hutchison erred in not granting a continuance of the summary judgment hearing to allow him to take the depositions of Judge Gregory and a representative of Compass Bancshares, and to again depose MacIntyre. In point of error 10, the plaintiff asserts Judge Hutchison abused his discretion in precluding the plaintiff from obtaining information about Judge Gregory's alleged disqualification. In point of error 11, the plaintiff complains that Judge Hutchison erred in granting the motions for protective orders and the motions to quash filed by John McMahen[10] and Compass Bancshares "because this discovery was relevant and necessary." In point of error 12, the plaintiff complains that Judge Hutchison erred in granting Judge Gregory's motion for protective order and motion to quash because his testimony was "relevant on [sic] the issues of disqualification and conspiracy." In point of error 13, the

---

[10] We do not know who *John* McMahen is. We assume the plaintiff means *Charles* McMahen, the chairman of the board of Compass Bancshares.

-11-

plaintiff asserts Judge Hutchison erred in quashing the deposition of Jerry Powell regarding Central Bancshares' "involvement in the litigation with R.O.T.C." In point of error 14, the plaintiff complains that Judge Gregory abused his discretion in denying him access to his mother's testamentary plan.

Judge Gregory recused himself in February 1993, apparently because, as a result of actions taken in the guardianship proceedings, the plaintiff intended to call the judge as a witness in the trust-family lawsuit.

## 1. The motion for continuance

On August 16, the day of the summary judgment hearing, the plaintiff filed a verified motion for a continuance in which he stated that he discovered evidence during MacIntyre's July 28 deposition "of apparent fraudulent conduct by MacIntyre and Judge Pat Gregory in entry of orders adverse to [the plaintiff]." His motion for continuance refers to an earlier motion for reconsideration of Judge Hutchison's orders granting the motions for protective orders of Judge Gregory, Compass Bank and Charles McMahen, that was denied by Judge Hutchison on August 12. The motion for reconsideration alleged certain facts "reflecting Judge Gregory and MacIntyre joined in a conspiracy to silence [the plaintiff]" and that Judge Gregory had been "compromised by David and Marietta Schumacher in early 1991." In his motion for continuance, the plaintiff stated that he intended to seek mandamus relief with respect to Judge Hutchison's refusal to allow him to depose Judge Gregory and McMahen. The plaintiff asserted this evidence was necessary to establish whether Judge Gregory had been disqualified from presiding over the consolidated lawsuits. He argued that he was deprived of due process from the date Judge Gregory became disqualified, and stated, "[I]t is wrong to proceed with either a trial or a hearing on any motion for summary judgment if Judge Gregory's testimony reflects that he was disqualified." The plaintiff prayed for a continuance until the court of

appeals ruled on his right to depose Judge Gregory.  Judge Hutchison denied the motion

for continuance at the August 16 summary judgment hearing.  The plaintiff did not seek

mandamus relief.

On appeal, the plaintiff argues:

> The deposition of MacIntyre, the guardian of Esther's Estate, taken July 28, 1993, revealed questionable activity by the guardian and Judge Gregory which could have profound impact on the case, including ex parte meetings between Judge Gregory and David and Marietta Schumacher and their representatives to discuss Edward, *from which a fair inference can be drawn that the decision to sue Edward[11] was made while R.O.T.C. was harassing Edward in the spring of 1992.*

(Emphasis added.)

We are not sure what the plaintiff's complaint on appeal is.  His motion for

continuance was based on his assertion that Judge Gregory had been disqualified from

presiding over the consolidated lawsuits.  That is not his complaint on appeal.  We hold

the plaintiff waived this point of error.  *Star Houston, Inc. v. Shevack*, 886 S.W.2d 414,

422 n.8 (Tex. App.--Houston [1st Dist.] 1984), *writ denied*, 907 S.W.2d 452 (Tex. 1995);

*see also* TEX. R. APP. P. 74(d) (a point of error is sufficient if it directs the attention of

the appellate court to the error about which complaint is made).

We overrule point of error five.

## 2. Judge Gregory's alleged disqualification

The plaintiff asserts Judge Gregory was disqualified from presiding over the

trust-family lawsuits because of his "banking relationship" with Compass Bank.  According

to the plaintiff, this banking relationship gave Judge Gregory a "significant personal or

---

11   At some point in the guardianship proceeding, MacIntyre filed suit against the plaintiff on behalf of Esther's estate, apparently to recover money the plaintiff allegedly owed the estate.

-13-

pecuniary interest" in the lawsuits that constitutionally disqualified him from sitting. The plaintiff asserts in his brief:

> Compass was in possession of a financial statement that was utilized as evidence to support criminal charges against Judge Gregory. There came a time when both Judge Gregory and Compass knew that Compass was in possession of evidence that could be used to incriminate him.[12] That fact had to be a part of the "banking relationship" between Compass and Judge Gregory. Both of them chose to conceal this critical fact as Compass went forward seeking favorable rulings from Judge Gregory. This was corrupt conduct by Compass which would count hard against it by the fact finder both in determining liability and punitive damages. R.O.T.C. was rewarded with a Summary Judgment while this fact was concealed.

The plaintiff asserts that because of his disqualification, all orders entered by Judge Gregory should be set aside, and that because many of the judge's orders restricted the plaintiff's discovery, the summary judgments, the order dismissing Shields, and the judgment with respect to the final accounting should also be set aside.

> The relevant section of the Texas Constitution provides in part:

> No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or by consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case. . . .

TEX. CONST. art. 5, § 11. The Texas Rules of Civil Procedure provide that judges shall disqualify themselves if "they know that, individually or as a fiduciary, they have an interest in the subject matter in controversy . . . ." TEX. R. CIV. P. 18b(1)(b). The "interest" required for constitutional or statutory disqualification of a judge must be a direct pecuniary or property interest in the subject matter of the litigation. *Gulf Maritime*

---

12      The criminal charges to which the plaintiff refers are unrelated to this case.

*Warehouse Co. v. Towers*, 858 S.W.2d 556, 558 (Tex. App.--Beaumont 1983, writ denied). The value of the interest must be capable of being estimated, and it must be something that the judge may gain or lose as a result of the judgment rendered in the case. *Maxey v. Citizens Nat'l Bank*, 489 S.W.2d 697, 702 (Tex. App.--Amarillo 1972), *rev'd on other grounds*, 507 S.W.2d 722 (Tex. 1974). The interest must be a direct, real and certain interest in the subject matter and result of the litigation, and not merely indirect, incidental, remote, possible or speculative. *Maxey*, 489 S.W.2d at 702.

The plaintiff has not briefed this issue in a manner that would assist this Court in determining the relationship between the parties and various entities and the significance of Judge Gregory's "banking relationship" with Compass Bank. It appears that Compass Bancshares is the parent corporation of both ROTC and Compass Bank, and that Central Bancshares of the South is the parent corporation of Compass Bancshares. Compass Bank was apparently never a party to this lawsuit,[13] and the plaintiff nonsuited Compass Bancshares on February 5, 1993. The plaintiff has not explained how a "banking relationship" with Compass Bank, a sister corporation of ROTC that was apparently never even a party to this lawsuit, rises to the level of a "significant personal or pecuniary interest" that disqualified Judge Gregory from presiding over the trust-family lawsuits.

Even assuming Judge Gregory was disqualified, however, we are not persuaded that the plaintiff was denied due process when Judge Hutchison granted the summary judgments in favor of Marietta, David, ROTC, and Nihiser.[14] The plaintiff

---

[13]   There are no pleadings in the record that indicate Compass Bank was ever a party to this lawsuit.

[14]   The summary judgment in favor of Fox and Shields' special appearance will be addressed in a separate portion of this opinion.

bases his due process argument on his assertion that Judge Gregory "made many orders which restricted discovery by [the plaintiff]." The plaintiff complains that Judge Gregory (1) quashed subpoenas for records that had been served upon Houghton and his law firm, Mayor, Day, & Caldwell, and (2) quashed the deposition of Jerry Powell, general counsel of Central Bancshares. However, the plaintiff cites no authority for his contention that he was denied due process. *See* TEX. R. APP. P. 74(f). Further, the plaintiff ignores the fact that the consolidated lawsuits were reassigned to Judge Hutchison in February 1993. The plaintiff could have sought reconsideration of the discovery orders about which he now complains.[15] To the extent we understand his due process argument, we conclude that the plaintiff was not denied due process. We overrule points of error nine and ten.

In point of error 12, the plaintiff asserts Judge Hutchison erred in granting Judge Gregory's motion for protective order and motion to quash because his testimony was relevant to the issues of disqualification and conspiracy. The plaintiff offers no argument concerning this complaint other than to assert that the trial court abused its discretion. Any error is waived. TEX. R. APP. P. 74(f). Additionally, we are unable to determine how the plaintiff was harmed by any order that precluded him from obtaining discovery relating to Judge Gregory's alleged disqualification. Judge Gregory recused himself in February 1993. Judge Hutchison presided over the trial after Judge Gregory's recusal. As we have already noted, the plaintiff could have sought reconsideration of any orders entered by Judge Gregory. We overrule point of error 12.

### 3. McMahen and Compass Bank

In point of error 11, the plaintiff complains that the trial court erred by

---

15    The plaintiff *did* seek reconsideration of Judge Gregory's orders granting Shields' special appearance, granting summary judgment in favor of Fox, and denying a motion to compel ROTC to produce certain documents.

granting the motion for protective order and motion to quash of "John McMahen"[16] and Compass Bancshares. We can find no discussion of McMahen or Compass Bancshares in the plaintiff's argument under these points of error. Any error is waived. TEX. R. APP. P. 74(f). We overrule point of error 11.

**4. Powell and Central Bancshares**

In his thirteenth point of error, the plaintiff complains that Judge Gregory erred in quashing the deposition of Jerry Powell, general counsel for Central Bancshares. Specifically, the plaintiff asserts that Central Bancshares did not sustain its burden to produce evidence to support its claim of privilege and that the attorney-client privilege does not apply in this case because the communications and documents were "generated during the course of fraudulent activities."

The scope of discovery rests largely within the discretion of the trial court. *Smith v. Gayle*, 834 S.W.2d 105, 107 (Tex. App.--Houston [1st Dist.] 1992, orig. proceeding). The party resisting discovery bears the burden of showing that the communication is protected by the asserted privilege. *National Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 460 (Tex. 1993).

The plaintiff noticed Powell's deposition. Central Bancshares objected, citing attorney-client privilege. In his supporting affidavit, Powell identified himself as general counsel for Central Bancshares and stated:

> Prior to the dispute with Mr. Caldwell concerning his Trust, I had no knowledge of any facts relating to Mr. Caldwell, his Trust, or the allegations made in this action. *Any information I may have obtained since the dispute began was obtained from representatives of either Central Bancshares or River Oaks, or both, who are authorized by the Companies to obtain professional legal services and act on advice rendered pursuant*

---

[16]    *See supra* note 10.

-17-

*thereto. These Company representatives provided me with information in my capacity as General Counsel for Central Bancshares* and as such this information is protected from compulsory disclosure by the attorney-client privilege. If the Companies are compelled to disclose such information, the Companies will be prejudiced by revealing to [the plaintiff] the Companies' strategies and tactics. *In addition, these clients (i.e., the authorized representatives of the Companies) provided this confidential information to me with a view to obtaining legal advice concerning the above-styled and numbered cause and the communications were made in furtherance of the rendition of professional legal services to the Companies.*

. . . .

Prior to the dispute with [the plaintiff] concerning his Trust, I had in my possession no documents concerning [the plaintiff], his Trust, or the matters alleged in this action. Any documents that may have come into my possession since the commencement were prepared by me, or by counsel, and are protected from compulsory disclosure by the attorney-client privilege or the work product doctrine, or both, because they were prepared in connection with this litigation by me or by counsel.

(Emphasis added.) Powell concluded by invoking the attorney-client privilege on behalf of ROTC and Central Bancshares.

On appeal, the plaintiff contends that Powell's affidavit is insufficient to support the claim of attorney-client privilege because it "simply stated that everything he knew and all documents reached by the subpoena had to be privileged." The plaintiff misrepresents Powell's affidavit. Powell specifically asserted that communications were made to him by representatives of ROTC and Central Bancshares "with a view to obtaining legal advice" concerning the plaintiff's lawsuit and that the communications were made "in furtherance of the rendition of professional legal services to" ROTC and Central Bancshares. We reject the plaintiff's argument that Powell's affidavit was insufficient to support a claim of privilege.

The plaintiff also asserts that the deposition testimony of John Kutak, a

trust officer for ROTC, defeated Powell's claim of privilege because it established that ROTC did not seek legal advice from Powell. However, Kutac testified that he had no personal knowledge of Powell's input; he did not testify ROTC never sought legal advice from Powell.

The plaintiff also asserts that the attorney-client privilege does not apply in this case because of the crime-fraud exception to the privilege contained in TEX. R. CIV. EVID. 503(d)(1).[17] The crime-fraud exception to the attorney-client privilege applies only if the party seeking discovery makes a prima facie showing of contemplated fraud. *Granada Corp. v. First Court of Appeals*, 844 S.W.2d 223, 227 (Tex. 1992). Whether there has been a prima facie showing of fraud is a matter for the court to determine. *Freeman v. Bianchi*, 820 S.W.2d 853, 861 (Tex. App.--Houston [1st Dist.] 1991, orig. proceeding), *approved sub nom. Granada Corp. v. First Court of Appeals*, 844 S.W.2d 223 (Tex. 1993). A prima facie showing is made by setting forth evidence that, if believed by a jury, would establish the client was about to commit or was engaging in an ongoing fraud. *Freeman*, 820 S.W.2d at 861-62. A perception or allegation that a particular action was fraudulent is insufficient by itself to make a prima facie showing of fraud. *Volcanic Gardens Management Co. v. Paxson*, 847 S.W.2d 343, 348 (Tex. App.-- El Paso 1993, orig. proceeding).

The plaintiff asserts that at a January 15, 1993 hearing, he offered sufficient proof to establish a prima facie case of fraud. We disagree. The plaintiff never argued to the trial court that the crime-fraud exception applied. The plaintiff merely reiterated his complaints against all the defendants in the case, asserted that Powell was "calling the

---

[17]     Rule 503(d)(1) provides that there is no privilege if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.

shots" for ROTC, and stated that Powell was responsible for ROTC's failure to produce documents. We conclude that the plaintiff did not make a prima facie showing that the crime-fraud exception to the attorney-client privilege applies in this case.

Finally, we note that, although the plaintiff argues the trial court abused its discretion in quashing Powell's deposition, he does not assert or explain that the trial court's alleged error was harmful. To support reversal, the trial court's refusal to permit discovery must have been such a denial of the plaintiff's rights that it was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. TEX. R. APP. P. 81(b)(1). The plaintiff has not adequately briefed this issue.

For all the foregoing reasons, we overrule point of error 13.

### 5. Esther's will

In point of error 14, the plaintiff asserts that Judge Gregory erred in denying him access to his mother's testamentary plan. The plaintiff has not supported this point of error with argument or authorities. This point is waived. TEX. R. APP. P. 74(f). We overrule point of error 14.

### The Summary Judgments

Six of the plaintiff's points of error concern the summary judgments. In points of error one, two, three, and seven, he asserts the trial court erred in overruling his objections to the defendants' summary judgment evidence and in granting summary judgment in favor of ROTC and Nihiser (point one), Fox (point seven),[18] David (point two), and Marietta (point three). In point of error four, he asserts the trial court erred in refusing to allow him to supplement his response to the defendants' motions for summary judgment, to consider the 1993 Appendix, or to grant a continuance. In point of error six,

---

[18]    We address point of error seven in our discussion of Fox's motion to dismiss.

he asserts the trial court erred in refusing to consider his seventh amended petition when it decided the defendants' motions for summary judgment.

## 1. Standard of Review

Summary judgment is proper if the movant establishes there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Bangert v. Baylor College of Medicine*, 881 S.W.2d 564, 566 (Tex. App.--Houston [1st Dist.] 1994, writ denied). In reviewing the summary judgment, we indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Johnson*, 891 S.W.2d at 644; *Bangert*, 881 S.W.2d at 565-66. In reviewing the granting of a motion for summary judgment, this Court will take all evidence favorable to the nonmovant as true. *Johnson*, 891 S.W.2d at 644; *Bangert*, 881 S.W.2d at 565; *Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 619 (Tex. App.--Houston [1st Dist.] 1993, writ denied).

A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Gary v. Bertrand*, 723 S.W.2d 957, 958 (Tex. 1987); *Marchal v. Webb*, 859 S.W.2d 408, 412 (Tex. App.--Houston [1st Dist.] 1993, writ denied). A defendant is also entitled to summary judgment if it conclusively establishes all elements of an affirmative defense as a matter of law. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *Bangert*, 881 S.W.2d at 566; *Marchal*, 859 S.W.2d at 412.

Once the movant has established a right to a summary judgment, the burden shifts to the nonmovant. The nonmovant then must respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Marchal*,

-21-

859 S.W.2d at 412. The nonmovant must expressly present issues precluding the movant's entitlement to summary judgment by written response or answer to the motion; the nonmovant's issues are not expressly presented by mere reference to summary judgment evidence. *McConnell v. Southside Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

When, as here, the trial court's order granting summary judgment does not specify the ground or grounds upon which it relied for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

## 2. ROTC and Nihiser

In point of error one, the plaintiff asserts the trial court erred in considering ROTC and Nihiser's summary judgment evidence and in granting their motion for summary judgment. He argues that ROTC and Nihiser did not disprove any of his causes of action and did not prove an affirmative defense.[19] ROTC and Nihiser moved for summary judgment on the grounds that (1) the conduct that was the basis for the plaintiff's claims was either authorized or required by the trust instrument; (2) they had no duty to refrain from such conduct; and (3) they breached no duty to the plaintiff by such conduct.

### A. Negligence and breach of fiduciary duty

The plaintiff asserts that the following constitute breaches of fiduciary duty and negligence: (1) allowing the plaintiff to be evicted from the Residence Inn; (2) disclosing information to Marietta; (3) refusing to resign as trustee; (4) "self-dealing by

---

[19] In his brief, the plaintiff asserts that he alleged causes of action against ROTC and Nihiser for negligence, breach of fiduciary duty, conversion, fraud, duress and coercion, intentional infliction of emotional distress, and for conspiracy. His sixth amended petition in the trust lawsuit does not, however, allege intention infliction of emotional distress or conspiracy.

refusing to produce records of [the plaintiff's] trust"; (5) "using its power to coerce and threaten [the plaintiff] and dissipate the trust"; and (6) paying ROTC's legal fees from the trust.

### (i) The Residence Inn incident

ROTC and Nihiser assert that its decision not to continue disbursing trust funds to pay for the plaintiff's continued stay at the Residence Inn after two weeks was made in compliance with the trust agreement, was based on appropriate factors, and was not an abuse of discretion. They further assert that whether ROTC abused its discretion is a question of law.

The payments to the Residence Inn were made from trust principal. The trust agreement provides that ROTC shall pay "such amounts out of the principal of such Trust as, in the sole, reasonable discretion of such Trustee, are necessary or advisable for the health, support, maintenance, comfort and welfare of the Beneficiary."

ROTC and Nihiser rely on the affidavit of Virginia Simons, the trust officer assigned to the plaintiff's trust. In her affidavit, Simons stated the following. ROTC paid in advance for the first two weeks of the plaintiff's stay at the Residence Inn. At the end of the two-week period, the plaintiff told Simons he wanted to stay at the Residence Inn, and wanted the trust to continue paying for his stay out of the trust principal. Simons asked the plaintiff to furnish her "with a statement from his health care providers to substantiate his need to remain in the hotel from a medical standpoint." The plaintiff did not comply. Simons then contacted the plaintiff's doctor, who stated there was no medical reason for the plaintiff to live in the hotel. The plaintiff told Simons that he did not want to go back to his apartment because it was dirty. Simons arranged to have a cleaning service meet with the plaintiff and schedule the cleaning of the apartment. She also told him that ROTC would not make any more payments to the Residence Inn out of

-23-

the trust principal "in view of the substantial drain on the assets of the trust" and the fact that she had been informed that his continued stay at the hotel was not medically necessary. She told both the plaintiff and the management of the hotel that ROTC would not pay the plaintiff's hotel bill after December 13. The plaintiff rejected Simons's offer to have the apartment cleaned while he was staying at the hotel. Simons noted that in 1990, ROTC made discretionary principal distributions of $34,174.41. At the end of the year, the value of the trust estate was $302,054.20. She concluded:

> In light of the advice of Mr. Caldwell's physicians, his health care provider, and Mr. Caldwell himself, and in light of the financial status of the Trust, I did not believe it would be prudent to honor Mr. Caldwell's request for distribution of trust principal in order for him to live in a hotel at a cost of $2,256.70 per month, particularly since Mr. Caldwell rented an apartment (at a cost of $475 per month) in Denver, Colorado, which was paid for from the Trust.

ROTC and Nihiser also rely on the plaintiff's own deposition testimony. The plaintiff admitted: he wanted to stay at the hotel because his apartment was filthy; he rejected the cleaning service Simons chose; and he knew that ROTC was not going to pay for his continued stay at the hotel after December 13.

The plaintiff objects that Simons's affidavit is a "series of opinions and conclusions by an interested witness and is incapable of proving anything as a matter of law." He asserts that Simons's statements regarding her conversation with the plaintiff's doctor and other healthcare providers are inadmissible hearsay. He also asserts his summary judgment evidence created fact issues regarding his eviction. His summary judgment evidence consists of: the deposition testimony of Dr. Perlman, who recommended that the plaintiff stay at the Residence Inn after he was discharged from the hospital; evidence that his apartment was a "horrible mess" at the time he was staying at the hotel; and his own deposition testimony that he was afraid if he returned to the dirty

-24-

apartment he would "lose his leg." He also relies on the affidavit of his expert, probate attorney Joseph Ashmore, who stated that ROTC

> failed to remain adequately informed as to the medical condition and needs of [the plaintiff] when determining whether or not to pay for [the plaintiff] to remain in the Denver Residence Inn after December 27, 1990 while recuperating from his three week hospital stay, and refusing to continue these payments was a clear abuse of discretion as trustee and a breach of the duty of reasonable care in exercising its judgment as trustee.

We agree with ROTC and Nihiser that ROTC's decision whether to pay for plaintiff's continued stay at the Residence Inn was an exercise of discretion pursuant to the terms of the trust agreement, and that whether ROTC abused its discretion is a question of law. A power is considered discretionary if the trustee may decide whether or not to exercise it. When discretion is given, it means reasonable discretion measured by the intention of the trustor when construing the whole trust instrument and aided by the surrounding circumstances. 5 HERBERT S. KENDRICK & JOHN J. KENDRICK, JR., TEXAS TRANSACTION GUIDE § 50C.22[3] (1995). In general, a court will not interfere with actions by trustees exercising discretion unless there is a showing of fraud, misconduct, or clear abuse of discretion. *Id.*; *see also Corpus Christi Bank & Trust v. Roberts*, 597 S.W.2d 752, 754 (Tex. 1980); *Rekdahl v. Long*, 407 S.W.2d 339, 344 (Tex. App.--Eastland 1966) (a trustee's discretion must be reasonably exercised to accomplish the purpose of the trust according to the settlor's intentions and its exercise of such discretion is subject to judicial review and control), *aff'd*, 417 S.W.2d 387 (Tex. 1967).

We also agree with ROTC and Nihiser that Simons's affidavit is competent summary judgment evidence.

> A summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and

> free from contradictions and inconsistencies, and could have
> been readily controverted.

TEX. R. CIV. P. 166a(c). The portion of Simons's affidavit dealing with the plaintiff's stay at the Residence Inn meets the requirements of rule 166a(c). It is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. The plaintiff did not controvert any of the assertions in the affidavit. Additionally, deposition testimony of Dr. Perlman indicates that there was no medical reason for the plaintiff to stay at the hotel.

ROTC's uncontroverted summary judgment evidence reflects that Simons's decision not to pay for the plaintiff's continued stay was neither arbitrary nor capricious, but was based on "judicious and responsible considerations." We hold the trial court did not err in granting summary judgment with respect to the plaintiff's negligence and fiduciary duty causes of action based on ROTC's refusal to pay for his continued stay at the Residence Inn.

### (ii) Disclosing information to Marietta

The plaintiff asserts that ROTC and Nihiser breached their fiduciary duty by revealing certain trust information to Marietta "well knowing there was a serious conflict between [the plaintiff] and his sister." Marietta had requested specific information about the trust shortly after Esther's stroke for "estate-planning purposes," but ROTC denied this request. However, ROTC did give information to Marietta in her role as advisor to the trust.

ROTC and Nihiser moved for summary judgment on the basis that ROTC had an express duty to confer with Marietta and an implied duty to confer with Marietta under paragraphs 10(E) and (F) of the trust agreement. Paragraph 10(E) provides in part:

> It is my request that the Trustee consult with my daughter,

Marietta Caldwell Schumacher, regarding the more important matters affecting the Trusts herein established during her lifetime, or for so long as she is able to do so, . . . and the matters referred to above shall include, but not be limited to, a sale of assets or a distribution of principal to a beneficiary; provided, however, the decision of the Trustee shall be final and conclusive as to any such matters, and further that if for any reason the Trustee is at any time unable to communicate with my daughter as to an important matter, failure to do so shall not affect the Trustee's decision with respect to that matter.

Paragraph 10(F) provides:

Notwithstanding the provisions of Paragraph 10(E), in the instance of a transaction involving an amount equal to ten percent (10%) or more of the value of the assets in any trust created hereunder, including, but not limited to, a transaction involving a sale, purchase or distribution of principal to a beneficiary, the Trustee shall obtain the written approval of my daughter, Marietta Caldwell Schumacher, with respect to any such transaction, . . . and if my daughter withholds approval of any transaction then the Trustee shall forebear from such transaction and shall be fully protected with respect to such forbearance and incur no liability in connection therewith.

ROTC and Nihiser supported their motion with the affidavits of Simons, Nihiser, attorney W.J. Williamson, and attorney John Hopwood.

Simons's affidavit provides:

7. I was aware that Mr. Caldwell "was at extreme odds" with this [sic] sister and so stated in a memorandum dated July 26, 1989. However, I was not of the impression then (and am not now) that the feeling was mutual. In fact, my dealings with Marietta have consistently led me to believe that regardless of Mr. Caldwell's feelings toward her from time to time, she has consistently cared about her brother's welfare and happiness. Neither I nor anyone else at River Oaks Trust Company to my knowledge knew of any reason to believe that Marietta Schumacher had breached fiduciary duties to her brother under the Trust or abused her discretion in advising the Trustee under paragraph 10(E) or in using her veto power under paragraph 10(F). Even more specifically, I was not

aware of any alleged "conflict" created by the will of E.P. Meyers, or even of the existence of E.P. Meyers, until I was informed of this allegation by John Hopwood, the attorney for River Oaks Trust Company in this matter, in approximately April or May 1992.

. . . .

9. On advice of legal counsel I have supplied Marietta Schumacher with current information about the Trust in her role as advisor under paragraphs 10(E) and (F). After consultation with legal counsel in July 1989, I refused her request for historical information about the Trust for estate planning purposes for her mother following Esther Caldwell's stroke because her request was unrelated to her role as advisor to the Trust.

The legal advice to which Simons refers was given by Williamson in response to a memo Simons wrote in July 1989. In this memo, Simons stated:

The trustor's daughter, Marietta Schumacher, has presented us with [a] power of attorney and has requested that we divulge certain information regarding the trust for the purpose of estate planning for her mother. *The trustor's son, Edward Caldwell, is at extreme odds with his sister, Marietta, and opposes divulging any information to his sister.* Under Article 10(E) of the trust instrument we are required to consult with Marietta concerning matters affecting the trust.

(Emphasis added.) Williamson responded, noting he had been informed that Marietta asked for all transactions since creation of the trust:

Under section 113.151 of the Trust Code, trustee is under duty to furnish beneficiary with statements of accounts since last accounting or creation of the trust . . . . You would be justified in advising Ms. Schumacher that you consider that 113.151 defines your duties. Moreover, Ms. Schumacher is not a beneficiary and, so far as I am informed, has no authority from the beneficiary to make this request.

In Williamson's affidavit, he stated that this advice

related only to Ms. Schumacher's request that she be furnished with statements showing all transactions since creation of the trust. No opinion was expressed at that time

with respect to any situation that may be governed by Section 10 of the trust.

. . . .

My view continues to be that disclosures to Mrs. Schumacher are permissible in her role as advisor to the Trustee under paragraphs 10(E) and (F).

Hopwood stated in his affidavit that he was the first ROTC representative to learn of the alleged conflict between the plaintiff and Marietta with respect to their grandfather's will. He stated he first saw a copy of the will in April or May 1992, and that "[p]rior to this time [ROTC] did not possess a copy of E.P. Meyers' will and had no knowledge of any alleged conflict between [the plaintiff] and his sister because of it."

In his affidavit, Nihiser addressed the alleged conflict between the plaintiff and Marietta over the provisions of their grandfather's will, and stated that "neither [the plaintiff], any representative of his, Marietta Caldwell Schumacher nor any other person ever raised the existence of such an alleged conflict in my presence, nor am I aware of it ever having been raised with any representative of River Oaks Trust Company while I was employed there."

In his partial response to the motion for summary judgment, the plaintiff objected to the defendants' summary judgment evidence; he also noted his expert witness, Ashmore, stated in his affidavit that ROTC abused its discretion as trustee by not inquiring into the nature and extent of any conflict between the plaintiff and Marietta, by not seeking legal advice, and by not asking the court for guidance before turning information about the trust over to her. On appeal, the plaintiff asserts that paragraphs 10(E) and (F) of the trust agreement do not "explain away as a matter of law (1) the extreme conflict between [the plaintiff] and Marietta which R.O.T.C. knew about and which would disqualify Marietta from having any voice; (2) ROTC attorney[']s advice[;] or (3) the wholesale providing of information to Marietta and using her as a weapon against

-29-

[the plaintiff]."[20]

Simons's affidavit reflects that while Simons knew the plaintiff was "at odds" with Marietta, she did not have reason to suspect that Marietta was "at odds" with the plaintiff, and she knew nothing about the alleged conflict over the provisions of E.P. Meyers's will until April or May 1992. Nihiser's affidavit reflects that he was unaware of the conflict regarding the will. Hopwood's affidavit reflects that the first time anyone at ROTC became aware of the will and its provisions was when the plaintiff's lawyer told him about it and gave him a copy of the will in April or May 1992. Williamson's affidavit reflects that this legal advice to Simons concerned Marietta's request for "statements showing all transactions since the creation of the Trust"; it did not concern information that might be given to Marietta in her capacity as advisor to the trust. These statements are all uncontroverted. They establish that Simons and Nihiser were not aware of a conflict between Marietta and the plaintiff that would preclude ROTC from providing her with information in her capacity as advisor to the trust pursuant to paragraphs 10(E) and (F) of the trust agreement.

The provisions of the affidavits of Simons, Williamson, Nihiser, and Hopwood that relate to the alleged conflict between the plaintiff and Marietta all meet the requirements of rule 166a(c).

The affidavit of the plaintiff's expert, Ashmore, does not raise a fact issue. It merely states his conclusion that ROTC breached its fiduciary duty. Legal conclusions are not proper summary judgment evidence. *Harris v. Varo, Inc.*, 814 S.W.2d 520, 523 (Tex. App.--Dallas 1991, no writ).

We hold the trial court did not err in granting summary judgment with

---

[20]   We do not understand the plaintiff's complaint that ROTC used Marietta as a "weapon" against him.

respect to the plaintiff's negligence and fiduciary duty causes of action based on ROTC's disclosure of information to Marietta.

### (iii) Self-dealing; coercion; dissipating the trust

The plaintiff provides no argument or authority to support his assertion that ROTC breached a fiduciary duty by refusing to produce trust records unless he signed a release. Additionally, although the plaintiff claims that ROTC "threatened him with Marietta and eviction" and threatened him with exhausting his trust through litigation, he has provided no argument or authority for this assertion. Further, his only record references are to his own pleadings, which do not constitute proper summary judgment evidence. We hold that the plaintiff has waived any argument that ROTC breached a fiduciary duty to him by refusing to produce records or by threatening to dissipate his trust. TEX. R. APP. P. 74(f).

### (iv) ROTC's refusal to resign as trustee

The trust agreement contained provisions regarding the resignation of the trustee. Under paragraph 7(B) of the agreement, if the trust became uneconomical,[21] ROTC could (1) resign and appoint an individual as a successor trustee, or (2) terminate the trust by distributing the remaining corpus to the beneficiary. Under paragraph 7(C), if at any time ROTC was unable or unwilling to continue to act as trustee, the trustor (Esther) could appoint a substitute trustee. If the trustor failed to appoint a successor trustee, ROTC could apply for court appointment of a successor trustee. The trust agreement contained no mandatory resignation provision, and allowed ROTC to resign at its discretion.

In June 1991, before the trust lawsuit was filed, the plaintiff's attorney asked

---

[21]   The trust agreement does not define "uneconomical."

ROTC to resign on the basis that the trust was uneconomical. The trust's assets at that time totaled $275,413.81. Simons, on behalf of ROTC, wrote to the plaintiff's attorney and stated that because the trust was not uneconomical, ROTC could not resign and appoint a successor trustee. She stated that ROTC would be happy to resign in favor of a court-appointed successor trustee. The plaintiff did not respond to this offer, but filed suit in November 1991 to have Loring replace ROTC as substitute trustee. In March 1992, ROTC notified the plaintiff of its intention of resigning as soon as a successor trustee could be appointed by Esther, her guardian, or the trial court. In April 1992, ROTC notified Marietta and the plaintiff's daughters that, unless they objected, it would accede to the plaintiff's demands and appoint Loring as successor trustee. Marietta asked ROTC not to appoint Loring, but to ask the court to appoint a successor trustee. In May 1992, ROTC filed its resignation and application for successor trustee with the court.

ROTC moved for summary judgment on the basis that it complied with the resignation procedure in the trust agreement. It argued that its decision to resign was subject to review only for abuse of discretion, and that it did not abuse its discretion with respect to the requested resignation.

On appeal, the plaintiff argues that his deposition testimony supports the fair inference that "the continued administration of the Trust by R.O.T.C., both due to its negligence and exorbitant charges, made the trust not only uneconomical but contrary to his best interest." We have reviewed the deposition testimony to which he refers. We find nothing in it to support an inference that the trust was uneconomical or that ROTC charged an exorbitant fee. In that testimony, the plaintiff complains about ROTC's failure to pay for his extended stay at the Residence Inn and its refusal to pay for an all-terrain vehicle. He was unable to recall other instances when ROTC refused his requests. He did not know how ROTC calculated its fee or the amount of the fee. Nothing in this

testimony supports an inference that ROTC's administration of his trust was contrary to his best interest or that the trust was uneconomical.

The plaintiff has not shown that the trial court erred in granting summary judgment with respect to the plaintiff's negligence and fiduciary duty causes of action based on ROTC's alleged refusal to resign.

### (v) Paying ROTC's legal fees from the trust

In his sixth amended petition, the plaintiff asserted that ROTC "negligently supervised its employees when it permitted ROTC to pay legal fees from [the plaintiff's] trust because such fees were for the benefit of ROTC and did not benefit [the plaintiff's] trust." ROTC moved for summary judgment on the ground that it had a legal right to charge those fees to the trust.

ROTC's summary judgment evidence included the affidavit of John Hopwood, an attorney who represented ROTC from April 1992 to December 11, 1992. In his affidavit, Hopwood states that he was retained by ROTC when the plaintiff filed a motion for contempt against ROTC and its chairman, John Cater, and a motion for sanctions against ROTC. Hopwood states:

> Plaintiff's motions for contempt and for sanctions were denied after a two-day hearing. The substantial majority of the expenses and attorneys' fees which have been charged to the Edward Meyers Caldwell 1980 Trust ($54,591.93) are those incurred by River Oaks Trust Company in defending against the Plaintiff's unsuccessful motions for contempt and for sanctions and in producing documents for Plaintiff's attorneys. Attorney's fees of John Fox, my predecessor as attorney-in-charge for River Oaks Trust Company, in the amount of $3,505.37[,] were also charged to the Trust because such fees were incurred in protecting the Trust against Caldwell's suit for termination. *All of the attorneys' fees and expenses that have been charged to the Edward Meyers Caldwell 1980 Trust were charged to the Trust before Plaintiff's Second Amended petition (the first pleading in which any liability claims were made against River Oaks Trust Company) was filed.*

(Emphasis added.)

The plaintiff does not controvert ROTC's assertion that the only legal fees paid from the trust were those incurred in defending against the plaintiff's suit to modify the trust and were not incurred defending against the plaintiff's tort charges. According to the plaintiff's brief, the fees paid from the trust were for attending three depositions and for defending a motion for contempt and for sanctions. The hearing on those motions was in June 1992, and the trial court denied the motions.

The plaintiff asserts that there is a fact issue as to whether the amount of $55,000 is a reasonable attorney's fee, but it appears he raises this issue for the first time on appeal;[22] this argument is therefore waived. *See* Tex. R. App. P. 52(a). He also asserts that the fees were caused by ROTC's "own intransigence" and that it was not entitled to charge those fees to the trust--in other words, that it was not reasonable for ROTC to charge its attorney's fees to the trust. The plaintiff's summary judgment evidence on this issue consists of the opinion of his expert, Ashmore, that ROTC abused its discretion as trustee by paying attorney's fees from the trust. This conclusory statement in Ashmore's affidavit is not proper summary judgment evidence. *Harris*, 814 S.W.2d at 523.

> Section 114.063 of the Texas Trust Code provides in part:
>
> (a) A trustee may discharge or reimburse himself from trust principal or income or partly from both for:
>
> > (1) advances made for the convenience, benefit, or protection of the trust or its property[.]

Tex. Prop. Code Ann. § 114.063 (Vernon 1995). A trustee may charge the trust for attorney's fees that the trustee, acting reasonably and in good faith, incurs in defense of

---

[22] The plaintiff has not referred us to any place in the record in which he raised an objection that the amount of the legal fees was unreasonable.

litigation involving administration of the trust.

> [W]hether a trustee should be awarded an attorney's fee for defending a suit involving administration of the trust depends on equitable considerations, . . . each case must be decided on its own facts, . . . the success or failure of the trustee in the litigation may be a matter to be considered but does not necessarily determine the trustee's right to the fee, and . . . the trustee's good faith and the reasonableness of his actions are matters to be considered . . . .

*American Nat'l Bank v. Biggs*, 274 S.W.2d 209, 222 (Tex. App.--Beaumont 1954, writ ref'd n.r.e.).

Here, ROTC incurred the legal fees in question defending against the plaintiff's suit to have Loring appointed as successor trustee. The Trust Code allows a trustee to reimburse itself for expenditures incurred in protecting the trust. Additionally, most of those fees were incurred in defending against the plaintiff's *unsuccessful* motions for contempt and for sanctions. We conclude the trial court did not err in granting summary judgment with respect to the plaintiff's claim of negligence regarding the payment of ROTC's legal fees from the trust.

### B. Conversion

The plaintiff asserted that ROTC and Nihiser converted trust funds when ROTC reimbursed itself for its attorney's fees from the trust. On appeal, both the plaintiff and ROTC and Nihiser rely on their discussion of attorney's fees in the sections of their briefs dealing with the plaintiff's negligence causes of action.

For the reasons stated above in our discussion of the plaintiff's claim of negligence regarding the payment of ROTC's legal fees from the trust, we hold that the trial court did not err in granting summary judgment on the plaintiff's cause of action for conversion.

## C. Fraud, Duress, and Coercion

### (i) Fraud

In his sixth amended petition, the plaintiff alleged that ROTC's conduct constituted a "scheme by ROTC to escape liability to [the plaintiff] of causes of action for damages arising from wrongs by ROTC and Nihiser." This scheme "relied upon false representations and concealments of material facts" that "would have affected [the plaintiff's] ability to interest lawyers in helping him pursue his claim for damages." The plaintiff asserted he reasonably relied on the misrepresentations and omissions and "has been fraudulently prevented from asserting his causes of action successfully." Further, he argues that "[b]y taking advantage of [the plaintiff's] health, ROTC has placed him in a position where his health hampers him from effectively assisting his counsel in pursuing his causes of action against ROTC."

ROTC and Nihiser moved for summary judgment on the fraud claim on the grounds that the filing of the plaintiff's lawsuit defeated his claim that he was defrauded out of a cause of action. On appeal, the plaintiff contends that "he has been affected in aiding his lawyers because his ill health was caused by Defendants, and has otherwise been damaged," and that ROTC and Nihiser were not entitled to summary judgment because they did not disprove this assertion. We do not understand how this assertion relates to his fraud claim. However, we agree with ROTC and Nihiser that because the plaintiff filed his lawsuit, he was not defrauded out of a cause of action. We hold the trial court did not err in granting summary judgment in favor of ROTC and Nihiser on the plaintiff's fraud claim.

### (ii) Duress and coercion

The plaintiff asserted that ROTC, Nihiser, and Fox schemed to prevent him from asserting his causes of action by threatening "imminent hart [sic] or injury" to his

business or property, that this coercion overcame his will and caused him to do things he otherwise would not do, and "placed him in a position where his health hampers him from assisting his counsel in pursuing his causes of action." ROTC and Nihiser moved for summary judgment on the basis that ROTC had a legal right or duty to take the acts about which the plaintiff complained.

Duress is the threat to do some act that the party threatening has no legal right to do. *Brown v. Cain Chem. Inc.*, 837 S.W.2d 239, 244 (Tex. App.--Houston [1st Dist.] 1992, writ denied). The threat must be of such character as to destroy the free agency of the party to whom it is directed. *Id.* It must overcome his will and cause him to do that which he would not otherwise do, and which he was not legally bound to do. *Matthews v. Matthews*, 725 S.W.2d 275, 278 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.). The restraint caused by such threat must be imminent, and must be such that the person to whom it is directed has no present means of protection. *Id.* Any coercion of another, either mental, physical, or otherwise, causing that person to act contrary to free will, may constitute duress. *Pierce v. Estate of Haverlah*, 428 S.W.2d 422, 425 (Tex. App.--Tyler 1968, writ ref'd n.r.e.).

Here, the plaintiff asserts that the following conduct of ROTC or its agents gives rise to his causes of action for duress and coercion: (1) allowing the plaintiff to be evicted from the Residence Inn; (2) disclosing information to Marietta; (3) refusing to resign as trustee; (4) "self-dealing by refusing to produce records of [the plaintiff's] trust"; and (5) "using its power to coerce and threaten [the plaintiff] and dissipate the trust."

We have already held that the trial court did not err in granting summary judgment with respect to the plaintiff's negligence and fiduciary duty causes of action based on ROTC's refusal to pay for his continued stay at the Residence Inn, the disclosure of information to Marietta, and its alleged refusal to resign. We held that the

plaintiff waived any argument with respect to his claims that ROTC was self-dealing by refusing to produce trust records and was using its power to coerce and threaten him and dissipate the trust.

The plaintiff has not provided any argument regarding the conduct about which he complains in addition to the argument in the section of this brief on negligence and breach of fiduciary duty. Additionally, we note that nothing prevented the plaintiff from asserting his causes of action; he filed his lawsuit.

We conclude the trial court did not err in granting summary judgment in favor of ROTC and Nihiser with respect to the plaintiff's duress and coercion claims.

**D. Conspiracy to defraud, coerce, and harm the plaintiff**

An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

The plaintiff did not plead a cause of action for conspiracy against ROTC and Nihiser in his sixth amended petition. He did include a conspiracy cause of action in his seventh amended petition, which was not considered by the trial court at the summary judgment hearing. The plaintiff alleged a cause of action for conspiracy against Marietta and David in his third amended petition in the family lawsuit. In this petition, he asserted that ROTC and Nihiser joined Marietta and David in the conspiracy to harm the plaintiff and defraud him of his inheritance.

Although they asserted in their motion for summary judgment that the plaintiff had not properly pled this cause of action against them, ROTC and Nihiser

-38-

addressed the conspiracy claim in the motion, arguing that the conduct about which the plaintiff complained was in conformance with the discretionary powers bestowed by the trust, and there was, therefore, no unlawful act. They also relied on the deposition testimony of Dr. Dermann, who stated that the plaintiff was "a stroke waiting to happen," and evidence of the plaintiff's hypertension, diabetes, and alcoholism to establish that its alleged acts or omissions did not cause the plaintiff's 1991 stroke or affect his ability to recover from the stroke.

In his summary judgment response, the plaintiff asserted only that "fact issues exist on conspiracy to defraud" and that the defendants' summary judgment evidence "does not negate conspiracy to defraud as a matter of law." On appeal, the plaintiff discusses the elements of conspiracy, argues that his petition alleged a cause of action for conspiracy, and asserts that "R.O.T.C. and Nihiser do not seriously try to support summary judgment of this cause of action." He states there is a fact issue concerning whether stress caused his stroke. The plaintiff provides no argument to support these contentions; significantly, he does not address ROTC's assertion that because it committed no unlawful acts, there could be no conspiracy. We hold the plaintiff has waived this issue. TEX. R. APP. P. 74(f).

### E. Intentional infliction of emotional distress

In their motion for summary judgment, ROTC and Nihiser noted that the plaintiff's sixth amended petition did not formally allege a cause of action for intentional infliction of emotional distress. They argued, however, that if his allegations were deemed to raise this cause of action, he could not establish the elements of the tort because (1) ROTC was "totally within its legal rights in taking all" the actions about which the plaintiff complained, and (2) as a matter of law, the acts did not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional

-39-

distress.

On appeal, the plaintiff asserts his petition was sufficient to allege a cause of action for intentional infliction of emotional distress, and that "Defendants' summary judgment evidence did not establish as a matter of law that such conduct was not extreme and outrageous . . . . "

The plaintiff presents no argument or authority with respect to ROTC's contention that he could not establish the elements of this tort because ROTC was legally entitled to take the actions about which he complained. *See Wornick v. Casas*, 856 S.W.2d 732, 735 (Tex. 1993). We conclude the plaintiff has waived any error.

### F. Conclusion: point of error one

We overrule point of error one.

### 3. The summary judgments in favor of David and Marietta

In points of error two and three. the plaintiff complains that the trial court erred in granting summary judgment in favor of David and Marietta. He asserts they did not disprove any of his causes of action or prove any affirmative defense.

In his third amended petition in the family lawsuit, the plaintiff asserted that Marietta and David, aided by Houghton and Shields,

> entered into a conspiracy to harm [the plaintiff] and to defraud him of his potential inheritance. David acted as Marietta's confidant, advisor and sub-agent. He directed most of the activities of Houghton and Shields. They began a course of conduct in which they sought every opportunity to create mental anguish for [the plaintiff] and place unnecessary pressure and stress upon him.

Although ROTC was not named as a defendant in this petition, the plaintiff asserted that in 1990, ROTC became "an active participant in the scheme to place undue pressure on [the plaintiff]." The petition alleged causes of action for negligence, intentional infliction of emotional distress, civil conspiracy, duress and coercion, and breach of fiduciary duty.

The plaintiff alleged the following acts as the bases for his causes of action:

(1) After Esther's stroke, Marietta "secretly entered Esther's safe deposit box."

(2) Marietta had Houghton draft the power of attorney signed by Esther, and concealed the preparation and execution of the power of attorney from the plaintiff.

(3) After Marietta was appointed as Esther's attorney in fact, she refused to provide funds for the mica venture.

(4) Marietta, David, and Houghton poisoned the relationship between the plaintiff and his daughters by trying to force the plaintiff to relinquish his inheritance to them.

(5) Marietta, David, and Houghton tried to implicate the plaintiff in a scheme to cheat on Esther's taxes.

(6) Houghton tried to trick the plaintiff into signing a promissory note for $1,535,000, to be secured by his inheritance, even though the plaintiff did not owe this money.

(7) In 1989, after Esther's stroke, Marietta sought information about the 1980 trust from ROTC for the purported purpose of "estate planning" for her mother, despite the fact that there was a conflict between the plaintiff and Marietta.

(8) Marietta and David "encourag[ed] and cooperat[ed]" with ROTC in a lengthy series of acts.

David and Marietta moved for summary judgment on the basis that the causes of action based on the specific acts alleged in (1) through (7) were barred by a two-year statute of limitations. The plaintiff filed the family lawsuit on August 25, 1992. It is uncontroverted that the acts alleged in (1) through (7) occurred in 1989.

The plaintiff asserts on appeal that he alleged a conspiracy that began in 1989 and continued even after the family lawsuit was filed. However, he presents no argument or authority regarding Marietta and David's affirmative defense of limitations with respect to the acts alleged in (1) through (7). We therefore hold that the plaintiff

-41-

has waived any complaint with respect to the summary judgments in favor of Marietta and David with respect to the acts alleged in (1) through (7) on the following causes of action: negligence, intentional infliction of emotional distress, duress and coercion, and breach of fiduciary duty.

With respect to these tort causes of action, on appeal the plaintiff alleges, first, that the limitations defense is not applicable to events that occurred after August 1990. We agree. The plaintiff also asserts that David and Marietta did not prove as a matter of law that they owed him no duty. Although the plaintiff asserted a number of bases for this duty in his third amended petition, on appeal he states that a duty existed because (1) David and Marietta "let Esther believe they would look after" the plaintiff, and (2) "Marietta and David assumed control over [the plaintiff] through the 1980 Edward Caldwell Trust."

Both Marietta and David moved for summary judgment on the plaintiff's negligence and breach of fiduciary duty claims in part on the ground that they owed the plaintiff no duty. On appeal, the plaintiff asserts: "It is true that siblings owe no fiduciary duty to each other as a general rule, but under the facts alleged in this case . . . such a duty existed." The plaintiff has presented no authority for his assertion that, under the circumstances alleged, David and Marietta owed him a fiduciary duty. The plaintiff also asserts, again without citation to any authority, that Marietta had a fiduciary duty to him because "she used her power in ways that affected [the plaintiff], despite being in a conflict of interest situation, including using her power as guardian of their mother's estate to sue [him]." Because he has not cited any authority to support his contention that Marietta and David owed him a fiduciary duty, he has waived any error with respect to the summary judgments on the cause of action for breach of fiduciary duty.

This portion of the plaintiff's brief is almost incomprehensible. It seems to

address only fiduciary duty; the plaintiff does not specifically argue that Marietta and David also owed him a duty of care. The plaintiff cites *Greater Houston Transportation Co. v. Phillips*, 801 S.W.2d 523 (Tex. 1991), a negligence case, for the proposition that foreseeability of the risk is the foremost consideration in determining whether a defendant was under a duty. *Id.* at 525. However, he cites this case in a paragraph that discusses *fiduciary* duty. The plaintiff does not explain how this proposition relates to this case other than to conclude, "David and Marietta owed a duty to Edward." He provides no other argument or authority to establish that Marietta and David did not prove they owed him no duty of care. We conclude that the plaintiff did not establish the trial court erred in granting summary judgment on his negligence cause of action.

With respect to his cause of action for coercion, the plaintiff states: "Defendants are liable for coercion, even though they did not successfully bend [the plaintiff's] will to give up his inheritance, because he was damaged by their coercion." He follows this statement with citation to two cases, but provides absolutely no argument for this contention. The plaintiff has waived any error with respect to the summary judgments in favor of Marietta and David on the ground of conspiracy. Tex. R. App. P. 74(f).

Finally, the plaintiff states the following: "Defendants' conduct was outrageous enough to trigger the cause of action for intentional infliction of emotional distress." He then refers the reader to his legal discussion of this tort under his point of error concerning the summary judgments in favor of ROTC and Nihiser. Again, the plaintiff has provided absolutely no argument to support this bald statement. The plaintiff has waived any error with respect to the summary judgments in favor of Marietta and David on the ground of intentional infliction of emotional distress. Tex. R. App. P. 74(f).

The plaintiff's cause of action for civil conspiracy is also based on acts (1) through (8) described above. He asserted that each of these acts was an overt act in

furtherance of the conspiracy to harm him and defraud him of his expected inheritance. The plaintiff asserts that Marietta's motion for summary judgment does not address his assertions regarding her alleged cooperation with ROTC in a long series of acts. The plaintiff also asserts that, to the extent Marietta and David complain in their summary judgment motion about deficiencies in the plaintiff's third amended petition, the motions are "a special exception in disguise" and cannot support summary judgment.

We agree with the plaintiff that summary judgment in favor of Marietta and David on the conspiracy cause of action was improper. Marietta and David did not address the plaintiff's allegations that they encouraged and cooperated with ROTC in the plaintiff's lengthy list of allegedly tortious acts. Instead, Marietta stated in her motion that because the plaintiff "enumerates no evidence of such encouragement and cooperation by [Marietta] . . . Plaintiff's conclusory allegations cannot withstand summary judgment." Both Marietta and David assert in their motions that the plaintiff's allegations of conspiracy are "not clearly specified."

"[T]he very essence and import of special exceptions is to force clarification of and specification in pleadings that are vague, indefinite, or uncertain." *Subia v. Texas Dep't of Human Serv.*, 750 S.W.2d 827, 829 (Tex. App.--El Paso 1988, no writ). Summary judgment based on a pleading deficiency is proper if a party has had an opportunity by special exception to amend and fails to do so, or files a further defective pleading. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1984); *see also Massey*, 652 S.W.2d at 934. Here, the plaintiff was not provided an opportunity to replead. Thus, the trial court improperly granted summary judgment in favor of Marietta and David on the issue of conspiracy.

We sustain points of error two and three with respect to the plaintiff's cause of action for conspiracy. We overrule points of error two and three with respect to the

-44-

plaintiff's remaining causes of action.[23]

## The 1993 Appendix

In his fourth point of error, the appellant asserts the trial court erred in refusing to consider the 1993 Appendix.

David filed his motion for summary judgment on July 9, 1993. ROTC and Nihiser filed their motion for summary judgment on July 21. Marietta filed her motion on August 2. The summary judgment hearing was set for August 16, 1993.

On August 12, the plaintiff filed summary judgment evidence he called the 1993 Appendix. The 1993 Appendix consisted of documents and deposition excerpts. It also included a "Sequence of Events" that was apparently drafted by one of his lawyers. The 1993 Appendix was unverified.

On August 13, ROTC filed a motion to strike the 1993 Appendix. ROTC stated that the 1993 Appendix was untimely and that ROTC could not adequately respond to it and would be prejudiced by the court's consideration of it.

At the August 16 summary judgment hearing, the plaintiff's lawyer filed a motion for leave to file the 1993 Appendix or, alternatively, for a continuance. In this motion, he asserted that the July 29 deposition of MacIntyre reflected fraudulent conduct on the part of MacIntyre and Judge Gregory, and showed that both MacIntyre and Judge Gregory had been "compromised" by the defendants. The plaintiff's lawyer also filed an affidavit to authenticate the evidence in the 1993 Appendix. The trial court denied the plaintiff's motion and refused to consider the 1993 Appendix in ruling on the summary judgment motions.

---

[23] The plaintiff asserts that he alleged a cause of action for fraud in his third amended petition. He did not specifically allege this tort; he alleged a *conspiracy* to defraud. Moreover, although he asserts on appeal that Marietta and David were guilty of fraud, his brief contains no argument addressing this cause of action.

The plaintiff asserts the trial court abused its discretion in refusing to consider the 1993 Appendix because he had good cause for the late filing.

Texas Rule of Civil Procedure 166a(c) provides that, except upon leave of court, "the adverse party, not later than seven days prior to the day of the hearing may file and serve opposing affidavits or other written response." The granting or denial of a motion to late-file summary judgment responses and evidence is within the sound discretion of the trial court. *White v. Independence Bank, N.A.*, 794 S.W.2d 895, 900 (Tex. App.--Houston [1st Dist.] 1990, writ denied). The trial court's ruling will not be disturbed absent an abuse of discretion. *Id.* We will not reverse the trial court's discretionary ruling unless the record clearly shows that the trial court disregarded the rights of a party. *Diaz v. Rankin*, 777 S.W.2d 496, 500 (Tex. App.--Corpus Christi 1989, no writ).

The plaintiff asserts he had good cause for his late filing because the 1993 Appendix contained no surprises and did not interject anything new. He states that the 1993 Appendix consisted of deposition excerpts and documents obtained in discovery that were "known to the defendants." He additionally asserts: the three pending motions for summary judgment were complex, and he needed more time to respond; his lawyers' time was "challenged" by ongoing discovery; he gave notice of the evidence at least six days before the hearing; the court had considered this evidence at the August 12 hearing; no defendant asked for more time to "deal with" the evidence; and the 1993 Appendix and Sequence of Events show genuine issues of fact.

The only reasons asserted by the plaintiff that might possibly indicate good cause for the untimely filing are his assertions that the pending motions for summary judgment were complex, and that his lawyers were "challenged" by ongoing discovery. However, these circumstances, by themselves, are not sufficient to persuade us that the

-46-

trial court abused its discretion by refusing to allow him to file the 1993 Appendix.

We overrule point of error four.

### The Seventh Amended Petition

In point of error six, the appellant asserts the trial court erred in refusing to consider his seventh amended petition in deciding the motions for summary judgment. He filed his seventh amended petition on August 16, the date of the summary judgment hearing.

Texas Rule of Civil Procedure 63 provides that pleadings may be amended within seven days of trial only with leave of court; leave shall be granted unless "there is a showing that such filing will operate as a surprise to the other party." A trial court has no discretion to refuse an amendment unless the opposing party presents evidence of surprise or prejudice, or the amendment asserts a new cause of action or defense, and the opposing party objects to the amendment. *Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex. 1992).

Here, ROTC objected on the basis that, among other things, the seventh amended petition added new allegations. The seventh amended petition added the cause of action of intentional infliction of emotional distress, and included new allegations, one of which was that Judge Gregory and MacIntyre had conspired with ROTC. We hold that the trial court did not err in refusing to consider the seventh amended petition.

We overrule point of error six.

### Shields' and Fox's Motions to Dismiss

Both Shields and Fox have filed motions to dismiss. Both argue that the plaintiff voluntarily dismissed them when he filed amended pleadings in which he did not name them as defendants.

The trial court granted Shields's special appearance and Fox's motion for

summary judgment on January 29, 1993, and denied Fox's motion to sever. On April 5, the plaintiff filed his third amended petition, which did not name Shields as a defendant or seek relief from her. On August 16, the plaintiff filed his seventh amended petition. In that petition, in which he incorporated the parties and claims from both the family and the trust lawsuits, he did not name either Shields or Fox as a defendant. In fact, he specifically stated that Shields is *not named* as a party defendant. Additionally, the seventh amended petition does not contain any allegation that Fox committed any negligent or wrongful acts.

An amended petition completely supersedes all previous pleadings. TEX. R. CIV. P. 65; *Kirk v. Garza*, 875 S.W.2d 24, 24 (Tex. App.--Houston [1st Dist.] 1994, writ denied); *Direkly v. ARA Devcon, Inc.*, 866 S.W.2d 652, 655 (Tex. App.--Houston [1st Dist.] 1993, writ dism'd w.o.j.). Omitting a defendant in an amended petition operates as a dismissal of that party. *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972); *Kirk*, 875 S.W.2d at 24.

In *Radelow-Gittens Real Property Management v. Pamex Foods*, 735 S.W.2d 558 (Tex. App.--Dallas 1987, writ ref'd n.r.e.), the trial court granted a summary judgment for one defendant, Pamex. After the trial court granted the summary judgment but before trial, Radelow-Gittens filed an amended petition in which it omitted Pamex as a defendant. Although the amended petition included the name Pamex in the style of the case, it did not contain any claim against Pamex. Radelow-Gittens proceeded to trial against the remaining defendant and lost. After final judgment was entered, Radelow-Gittens appealed the summary judgment in favor of Pamex. *Id.* at 559. The court of appeals dismissed the appeal, holding that when Radelow-Gittens amended its petition, it abandoned all claims against Pamex, and waived any error by the trial court in rendering the summary judgment in favor of Pamex. *Id.* at 560.

-48-

This case is similar to ***Radelow-Gittens***. After the trial court granted Shields's special appearance and Fox's motion for summary judgments, the plaintiff filed an amended pleading that abandoned all claims against Shields and Fox and that specifically stated that Shields *was not* a named defendant.

We hold that the plaintiff abandoned all claims against Fox and Shields when he filed his seventh amended petition, and that he has waived error, if any, committed by the trial court in granting Shields' special appearance and Fox's motion for summary judgment. We grant the motions to dismiss filed by Shields and Fox. Because we grant Fox's motion to dismiss, we do not rule on the cross-point in his brief asking us to impose sanctions against the plaintiff for bringing a frivolous appeal. We also overrule plaintiff's point of error seven (asserting the trial court erred in granting summary judgment in favor of Fox), point of error eight (asserting the trial erred in granting Shield's special appearance), and that portion of point of error nine (asserting that the plaintiff was denied due process because Judge Gregory was constitutionally disqualified) that relates to Shields and Fox.

### The Final Accounting

On May 20, 1992, ROTC filed its "Resignation of Trustee, Application For Appointment of Successor Trustee and Application for Approval of Final Account" in which it gave notice of its resignation as trustee effective upon court appointment of a successor trustee and asked the trial court to approve its final accounting. ROTC filed a series of supplementary accounts, two of which reflected the payment of approximately $53,000 in attorney's fees paid to Hopwood's law firm.

On October 21, 1993, the day of the hearing on ROTC's accounting, the plaintiff filed an objection to the final accounting and supplemental accountings in which he generally denied each allegation and objected to the payment from trust principal of

trustee's fees and attorney's fees. He also objected to ROTC's request that it be released from all rights, duties, and liabilities associated with the trust because of ROTC's alleged negligence, breach of fiduciary duty, commission of other unidentified intentional torts, and participation in a conspiracy to defraud him.

At the hearing, the plaintiff attempted to present evidence regarding the issues of ROTC's charging attorney's fees to the trust and of ROTC's alleged bad faith, asserting that the expenditures for trustee's fees and attorney's fees should not be approved by the court. The trial court refused to allow the plaintiff to revisit these issues, holding that they had been thoroughly briefed and ruled on in the summary judgment proceeding.

On appeal, the plaintiff asserts that the trial court erred "in deciding that [ROTC's] accounting and request for discharge as trustee . . . were decided by summary judgment because there was no such ground for summary judgment stated in" the motion for summary judgment. The trial court did not grant *summary judgment* on these matters; it approved ROTC's accounting and request for discharge, and overruled the plaintiff's objections to the payment of trustee's fees and attorney's fees from the trust on the basis that these issues had been decided when it granted ROTC's motion for summary judgment. We hold that the trial court did not err in granting ROTC's final accounting.

The plaintiff also asserts the trial court erred in making the following rulings: denying him a jury trial or evidentiary hearing on his objections to the final accounting; overruling his objections to the payment of trustee's fees and attorney's fees from the trust; and not considering the 1993 Appendix in ruling on the final accounting. The plaintiff has provided no argument or authority for these contentions, and has therefore waived any complaint. *See* Tex. R. App. P. 74(f).

We overrule points of error 15 and 16.

-50-

## Conclusion

We grant the motions to dismiss filed by Fox and Shields. We affirm the summary judgments in favor of ROTC and Nihiser. We reverse the summary judgment in favor of Marietta and David on the issue of conspiracy. We affirm the summary judgments in favor of Marietta and David on the remaining causes of action. We affirm the final accounting.

/s/ Michol O'Connor
MICHOL O'CONNOR
Justice

Justices Cohen and Wilson also sitting.

Do not publish. TEX. R. APP. P. 90.

Judgment rendered and opinion delivered **MAY - 2 1996**
True Copy Attest:

Margie Thompson
Clerk of Court

-51-

## Conclusion

We grant the motions to dismiss filed by Fox and Shields. We affirm the summary judgments in favor of ROTC and Nihiser. We reverse the summary judgment in favor of Marietta and David on the issue of conspiracy. We affirm the summary judgments in favor of Marietta and David on the remaining causes of action. We affirm the final accounting.

/s/ Michol O'Connor
MICHOL O'CONNOR
Justice

Justices Cohen and Wilson also sitting.

Do not publish. Tex. R. App. P. 90.

Judgment rendered and opinion delivered **MAY - 2 1996**
True Copy Attest:

Margie Thompson
Clerk of Court

-51-